[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14525
Non-Argument Calendar

_____

D.C. Docket No. 5:19-cv-00153-TKW-MJF

RMI HOLDINGS,

Plaintiff - Appellee,

versus

ASPEN AMERICAN INSURANCE COMPANY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 15, 2021)

Before MARTIN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Aspen American Insurance Company appeals the district court's

determination that Florida law applies to RMI Holdings' maritime insurance contract

claims against it and its application of Florida law entitling RMI to attorneys' fees. Aspen argues that the district court misapplied the Restatement (Second) of the Conflicts of Law's "most significant relationship" test in determining that Florida, not Georgia, law governs this issue. Aspen also argues that, even applying Florida law, the award of attorneys' fees was in error. After careful review, we disagree and affirm.

## I.

RMI Holdings, a Georgia corporation, insured its boat, the Leelanau, with Aspen American Insurance Company, a Texas insurer headquartered in Connecticut, under maritime insurance policies. Offshore Risk Management, a Florida limited liability company with an office in Florida, represented RMI as a wholesale broker in securing those policies.

At issue here is a renewal policy, the application for which ORM transmitted to USI Insurance Services, LLC, a limited liability company with its principal place of business in New York and an office in Miami, Florida. USI served as RMI's agent for the renewal of the insurance policy. USI then sent ORM the completed application materials, and ORM submitted them to Yachtinsure, Ltd., Aspen's underwriting and claims handling agent. The renewal application included RMI's address in Ocilla, Georgia, and that the Leelanau was kept in Port St. Joe, Florida. Because RMI's Georgia address was included in the application, Yachtinsure

2

included a Georgia amendatory endorsement to comply with Georgia law. The policy also limited navigation of the Leelanau to the "Waters of Gulf of Mexico, Florida and Bahamas (Excluding Cuba) not exceeding 250 miles offshore." And it contained a forum selection clause limiting the courts where RMI could file suit against Aspen to the United States District Courts for the Southern District of New York, Southern District of Florida, Eastern District of Louisiana, and the Southern District of Texas. Yachtinsure sent the policy to ORM via email, ORM emailed the policy to USI, and USI emailed it to RMI.

While moored in Port St. Joe, the Leelanau suffered substantial damage from Hurricane Michael. RMI then filed a claim under the policy for that damage, and Aspen denied coverage. So RMI filed suit in the Northern District of Florida against Aspen for breach of the insurance policy, ORM for negligence, and USI for negligence and breach of fiduciary duty. No party timely objected to venue despite the fact that the Northern District of Florida was not designated in the forum selection clause. In its answer, Aspen asserted a counterclaim against RMI seeking a declaration that the policy did not provide coverage for damages to the Leelanau from Hurricane Michael.

All parties except for USI filed motions for summary judgment. Before ruling on the merits of those motions, the district court had to determine a threshold issue: what law applies to each claim? As relevant to this appeal, the district court applied

3

the Second Restatement's most significant relationship test and determined that Florida law applies to both RMI's contract claim against Aspen and Aspen's counterclaim. As part of that determination, the court found, first, that even though the policy was delivered to ORM in Florida, "ORM was merely the conduit for delivery of the policy (through USI) to [RMI] in Georgia." Second, the court determined that the policy was negotiated in Florida but did not give that factor much weight since the negotiations occurred over email. Third, any proceeds from the policy would be paid out in Georgia. Fourth, the Leelanau was moored in Florida "and the policy specifically contemplated that it would be used in Florida waters" and did not contemplate its use in Georgia. And fifth, the parties to the policy are a Georgia corporation and Texas corporation with a principal place of business in Connecticut. Weighing those five factors, the court concluded that the two factors favoring Florida law outweighed the three factors favoring Georgia law. The district court then granted RMI's motion for summary judgment against Aspen.

Afterward, the court ordered the parties to submit briefs addressing whether RMI was entitled to attorneys' fees. Aspen filed a motion for reconsideration of the court's order on the motions for summary judgment, which the court denied. In its order denying reconsideration, the district court rejected Aspen's argument that the policy at issue was delivered in Georgia, not Florida, for purposes of Florida law. The court held that (1) the policy was physically delivered to a broker, ORM, in

Florida; and (2) the policy was "issued for delivery" in Florida under Fla. Stat. § 627.409(2) because the Leelanau was located in Florida. For those reasons, the court determined that RMI was entitled to recover attorneys' fees from Aspen under Fla. Stat. § 627.428(1). Aspen appealed.[1]

## II.

### A. Choice-of-Law

Under Georgia law, an insured may recover attorneys' fees only if an insurer's refusal to pay was in bad faith. O.C.G.A. § 33-4-6. Under Florida law, bad faith is not required. *See* Fla. Stat. § 627.428. Accordingly, we must decide which state's law governs the attorneys' fees issue.

We review a district court's choice-of-law determination *de novo*. *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1380 (11th Cir. 2006). "[S]tatutes allowing for recovery of attorney's fees are substantive for *Erie* purposes." *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001). Accordingly, we must first determine whether a federal maritime law exists to preempt the application of state law. *See id.*

Typically, we decide cases arising under our maritime jurisdiction according to federal maritime law. *See Misener Marine Const., Inc. v. Norfolk Dredging Co.*,

---

[1] We note that Aspen is not appealing the district court's ruling that the insurance policy affords coverage for RMI's loss. The only order that Aspen appeals is the district court's award of attorneys' fees under Fla. Stat. §627.428(1).

5

594 F.3d 832, 839 (11th Cir. 2010). But because this case arises under maritime insurance law, and no established federal maritime policy exists as to awards of attorneys' fees in maritime insurance disputes, state law applies. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955); *see also All Underwriters v. Weisberg*, 222 F.3d 1309, 1313 (11th Cir. 2000). To determine *which* state's law applies, we apply the Restatement (Second) Conflict of Law's "most significant relationship" test. *Dresdner*, 446 F.3d at 1381. Specifically, because the issue of attorneys' fees arises out a contract dispute, we consider the five factors found in Section 188. *See Am. Family Life Assur. Co. of Columbus v. U.S. Fire Co.*, 885 F.2d 826, 833 (11th Cir. 1989). Those factors are: "(a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the locus of the subject matter of the contract; and (e) the domicile of the parties." *Id.* at 1382; *See also* Restatement (Second) Conflict of Laws § 188(2) (1971).

The district court weighed those five factors and determined that Florida law applies. Aspen argues that the district court erred because it failed to give paramount consideration to the location of the insured at the time the policy was issued, which it considers to be the dispositive factor in maritime insurance matters. It further argues that the district court erred by never actually weighing Florida's interests in having its law apply against Georgia's. We disagree.

As an initial matter, we can dispense with Aspen's argument that the district court merely applied the Section 188(2) factors without actually considering which state had the most significant relationship to the transaction. Section 188(1) states that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Section 6 lists seven policy goals that guide our application of the five Section 188(2) factors: (1) "the needs of the interstate and international systems," (2) "the relevant policies of the forum," (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," (4) "the protection of justified expectations," (5) "the basic policies underlying the particular field of law," (6) "certainty, predictability and uniformity of result, and" (7) "ease in the determination and application of the law to be applied." The district court considered the five Section 188(2) factors in light of these policy considerations, determined "their relative importance with respect to the particular issue," *id.*, and concluded that Florida law applies.

Next, we consider each of the five Section 188(2) factors. On de novo review, we conclude that Florida law governs the issue of attorneys' fees in this case.

First, "the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract

7

binding effect[.]" Restatement (Second) Conflict of Laws, § 188 cmt. e on Subsection (2) (1971). The common-law presumption in the forum—Florida—is "that an insurance representative, serving as an independent insurance broker, acts on behalf of the insured for purposes of procuring insurance coverage." *Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1045 (Fla. 2008), *superseded on other grounds by statute as recognized in Essex Ins. Co. v. Integrated Drainage Sols., Inc.*, 124 So.3d 947, 951 (Fla. 2d DCA 2013). This means that a contract is formed upon delivery of an insurance policy to that broker. *See id.* Accordingly, the "last act necessary . . . to give the contract binding effect" under Florida's rules of offer and acceptance occurred in Florida, where the contract was delivered to ORM. This factor weighs in favor of applying Florida law.

Second, ORM and Aspen's underwriter negotiated the policy via email. The district court determined that those negotiations occurred in Florida, where ORM is located, and in England, where the underwriter is located. Because no party advocated for English law to apply, the district court concluded that this factor favors Florida law but gave it little weight. We agree. Aspen has not argued, nor do we find any facts to support an argument, that any negotiations occurred in Georgia. This factor weighs in favor of Florida.

Third, the place of performance is Georgia because that is where payment would be received by RMI under the policy. The parties dispute how heavily this

8

factor should weigh in favor of Georgia law. RMI argues that, because performance under this contract is a simple matter of payment, Georgia has no significant interest in having its law govern the attorneys' fees issue. Aspen argues that this contact is highly important. We need not ascribe any precise weight to this factor, as we conclude that Florida law would apply regardless of whether we afford it some or little weight.

Fourth, the locus of the subject matter of the contract, the Leelanau, was Florida. The Leelanau was moored in Florida, and the policy contemplated that it would be used in Florida, the Gulf of Mexico, and the Bahamas. The policy did not cover the boat's use in Georgia, despite Georgia having a coastal area where the boat could be used. The comments to Section 188 state that "[w]hen the contract deals with a specific physical thing, such as land or a chattel, or affords protection against a localized risk, such as the dishonesty of an employee in a fixed place of employment, the location of the thing or of the risk is significant." Restatement (Second) Conflict of Laws, cmt. e to Subsection (2) (1971). That is so because "[t]he state where the thing or risk is located will have a natural interest in transactions affecting it" and the parties will often expect that the law of that state would apply "to determine many of the issues arising under the contract." *Id.* And we know that Aspen considered the location of the boat here because it calculated the premium as

9

a Florida risk. Under these facts, we give this factor significant weight in our balancing.

Fifth, we consider the parties' domiciles. RMI is a Georgia corporation and Aspen is a Texas corporation with its principal place of business in Connecticut. This contact is of "greater importance when combined with other contacts, such as that this state is the place of contracting or of performance or the place where the other party to the contract is domiciled or does business." *Id.* We give this contact little weight because RMI—the Georgia corporation—is not seeking the benefit of Georgia law and because the contract was negotiated and finalized in Florida. Aspen argues that "the overwhelmingly important connection is to Georgia because that state has expressed an overriding interest in the protection of its own citizens and in the regulation of marine insurers who issue policies to Georgia citizens." But that interest in the protection of Georgia citizens is not triggered here, where Aspen would have a court potentially deny a fee award to a Georgia citizen by applying a more restrictive Georgia law. Georgia does not have an interest in reducing its citizens' recovery under a contract that was negotiated and delivered in another state.

Factors one, two, and four each favor Florida law. Factors three and five each favor Georgia law. Weighing those factors in light of the policies set forth in Section 6, we conclude that Florida law applies. Here, the most important contacts are that the insurance contract was negotiated in Florida, it was finalized by delivery to a

10

Florida insurance broker, the parties expected that the Leelanau would be moored in Florida, and Aspen calculated its rates based on the risk being in Florida. Georgia has very little interest in applying its law on this issue. Florida, on the other hand, has an interest in applying its law. Accordingly, the relative interests of the states and the expectations of the parties are better served by applying Florida law.

## B. Application of Florida Law

"The proper standard for an award of attorney's fees is a question of law that we review *de novo*." *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904 (11th Cir. 2003). But we review the district court's factual findings relevant to the application of that standard only for clear error. *Id.* Finally, we review the district court's decision to award attorneys' fees for abuse of discretion. *Id.*

The district court properly identified Fla. Stat. § 627.428(1) as the standard governing whether RMI is entitled to attorneys' fees. Section 627.401 states that "[n]o provision of this part of this chapter applies to: . . . (2) Policies or contracts not issued for delivery in this state nor delivered in this state, except as otherwise provided in this code." But, as we have previously explained, delivery of the policy to ORM—a Florida broker working on behalf of RMI—is delivery under Florida law. *See Essex Ins. Co.*, 985 So. 2d at 1051. Because the policy was delivered to ORM in Florida, Section 627.428(1) applies.

11

## III.

Under the Restatement (Second) of the Conflicts of Law's "most significant relationship" test, Florida law applies to the issue of whether RMI may recover attorneys' fees from Aspen. Applying Florida law, the policy was delivered to RMI through its agent in Florida. Accordingly, we affirm the district court's grant of summary judgment and supplemental order.

**AFFIRMED.**