NOT FOR PUBLICATION

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

Nos. 24-11998, 24-14028
Non-Argument Calendar

————————————————

DAVID THOMPSON,

*Plaintiff-Appellee,*

*versus*

REGIONS SECURITY SERVICES, INC.,
   a Florida corporation,

*Defendant-Appellant.*

————————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-62152-WPD

————————————————

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

   Regions Security Services, Inc., appeals the district court's grant of summary judgment in favor of David Thompson, on his

claim that Regions manipulated Thompson's regular rate of pay to avoid paying overtime compensation required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). Regions also appeals the court's decision to award Thompson $94,627.50 in attorney's fees, contending that he was not a "prevailing party," that the award is excessive and unreasonable, and that he is not entitled to recover mediation costs and fees. After careful review, we affirm.

## I. Factual Background

The relevant facts are brief and essentially undisputed. From 2015 to 2020, Thompson worked for Regions as a security guard. He usually worked 40 hours or less at a wage of $13.00 per hour, plus an overtime wage of $19.50 per hour (one-and-a-half times his $13.00 rate). In 2019, Thompson accepted Regions's offer to work not less than 60 hours per week at a reduced wage of $11.15 per hour, and a corresponding overtime wage of $16.73 per hour (again, time-and-a-half). That hourly wage was less than the $12 per hour that Regions paid him when he started. Thompson received the reduced wage from July 22, 2019, through July 5, 2020, when Regions was scheduling him for at least 20 hours of overtime. Once Regions stopped scheduling Thompson for overtime in July 2020, it restored his non-overtime wage to $13 per hour.

## II. Procedural History

Thompson sued Regions for violating the FLSA's overtime provisions. He claimed that Regions reduced his regular wage "to an artificially low rate," from $13.00 to $11.15 per hour, to

effectively nullify his overtime compensation during the weeks he was scheduled to work 60 hours.

The district court granted judgment on the pleadings for Regions, but Thompson appealed, and we vacated and remanded for further proceedings. *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1311–12 (11th Cir. 2023). We held that Thompson plausibly alleged that Regions fluctuated Thompson's non-overtime hourly rate "as a device to avoid paying him overtime." *See id.* at 1308–11. We explained that, while employers could lawfully reduce an employee's non-overtime hourly rate, the reduction could not be "justified by the length of [the] workweek" alone. *Id.* at 1310.

## A. Summary Judgment

On remand, the parties filed cross-motions for summary judgment. The district court granted Thompson's motion as to liability, denied it as to damages, and denied Regions's motion. In relevant part, the court concluded that Regions had offered no evidence that it based the reduction of Thompson's pay on legitimate factors other than the number of hours in his workweek, which was not a permissible reason under our decision on appeal. Thus, the court concluded that undisputed facts established Regions was attempting to circumvent the FLSA overtime provisions by manipulating Thompson's regular rate.

Following the district court's summary-judgment order, Thompson filed notice that it had accepted Regions's Offer of Judgment under Rule 68(c). Regions's offer stated that it would allow "judgment to be entered . . . in the amount of $5,650.82, in full

satisfaction of all wage claims and liquidated damages."  In the offer, Regions noted that the court had "determine[d] that Regions is liable to Thompson for unpaid overtime hours due," leaving only damages to be determined, and that the offer was "not an admission or confession of liability by Regions, who retains the right to appeal the Court's determination of liability."  The offer also provided that it was "made without prejudice to Thompson's right to seek attorney's fees and costs by timely motion in accordance with 29 U.S.C. § 216(b)."

Consistent with Regions's offer, the district court entered final judgment in favor of Thompson in the amount of $5,650.82, representing unpaid overtime compensation and liquidated damages.  The court explained that it had reviewed whether the settlement as embodied in Thompson's acceptance of the Rule 68 offer was "fair and reasonable" under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1981), and found that it was.  The court took "no position on what appeal rights" Regions retained.  The court also "retain[ed] jurisdiction to determine [Thompson's] reasonable attorney's fees and costs" under 29 U.S.C. § 216(b).  Regions filed an appeal, which was docketed as appeal number 24-11998.  Regions also obtained a stay of execution of the judgment by submitting a supersedeas bond.

## B. Attorney's Fees

After that, Thompson filed a motion for attorney's fees and non-taxable costs, and Regions responded in opposition.  The

district court referred the matter to a magistrate judge, who issued a report and recommendation.

In the R&R, the magistrate judge recommended that Thompson be granted reasonable attorney's fees as a "prevailing party," rejecting Regions's various arguments to the contrary. The magistrate judge also reviewed the fee motion and its supporting documentation and calculated a lodestar figure of $94,627.50, finding that the requested hours and fees were broadly reasonable, with some minor tweaking. The magistrate judge rejected Regions's arguments for reducing the lodestar in view of the results obtained.

Regions objected, maintaining that Thompson was not a "prevailing party" under the FLSA for several reasons, and that the attorney's fees award was excessive, among other arguments. The district court overruled Regions's objections and adopted the fee award reflected in the R&R. Regions filed a separate notice of appeal of the attorney's fees award, which was docketed as appeal number 24-14028. The merits and attorney's fees appeals have been consolidated for disposition.

### III. Jurisdiction

We start with our appellate jurisdiction, which the parties briefed in supplemental filings. We have a *sua sponte* obligation to consider our appellate jurisdiction, which we review de novo. *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009).

In general, "a party has no standing to appeal an order or judgment to which he consented." *Hofmann v. De Marchena Kaluche*

*& Asociados*, 657 F.3d 1184, 1187 (11th Cir. 2011). "But there is an exception to that rule: when a party enters a consent judgment and expressly preserves the right to appeal a previously contested issue, the party retains standing to appeal." *Perez v. Owl, Inc.*, 110 F.4th 1296, 1303 (11th Cir. 2024); *see also Dorse v. Armstrong World Indus., Inc.*, 798 F.2d 1372, 1376 (11th Cir. 1986) (holding that the appellant could appeal where the settlement "expressly recognized" the party's intent to appeal a prior ruling).

Here, we have no genuine doubt of our appellate jurisdiction. Similar to the settlement in *Perez*, Regions's Rule 68(c) offer of judgment, accepted by Thompson, expressly stated that it was "not an admission or confession of liability by Regions, who retains the right to appeal the Court's determination of liability." To be sure, the district court did not affirm that reservation, and instead took "no position on what appeal rights" Regions retained. But the accepted offer, which served as the basis for the court's entry of final judgment, expressly recognized Regions's intent to appeal the court's finding that Regions was liable for FLSA overtime violations. *See Dorse*, 798 F.2d 1376–77. "We see no reason why that intent should be frustrated in this case." *Id.* at 1377.

We reject Thompson's contention that the settlement rendered this case moot. True, generally speaking, "settlement between the parties in litigation renders the case moot." *Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369, 372 (11th Cir. 2012). In *Yunker*, we held that an accepted Rule 68 offer of judgment mooted the case despite an express reservation of appeal

rights. *Id.* at 372. We noted that, despite the purported reservation, the parties had "entered into a final, unconditional monetary settlement," and there was no indication that the defendant's success on appeal would "affect the underlying settlement and judgment." *Id.* at 374 & n.3. So we were unable to conclude that either party had "a continuing financial stake in this particular litigation," particularly since the defendant had already paid the plaintiff under the settlement. *See id.*

*Yunker* is materially different from this case. As in *Dorse*, which *Yunker* distinguished, there's no indication here "that the parties entered into a final, unconditional monetary settlement, whereby the defendant's success on appeal would not affect the underlying settlement and judgment." *Id.* at 374 n.3. Regions offered to resolve the issue of damages only after the court determined that Regions was liable for overtime violations, and Regions expressly conditioned the offer on its ability to appeal the liability determination, meaning Regions's success on appeal would affect the underlying settlement and judgment. *See id.* And Regions obtained a stay of execution of the judgment pending appeal after depositing the funds with the court, so the parties have a continuing financial stake in the outcome. *See id.* at 374. The case is not moot.

## IV. Discussion

Still, that the appeal isn't moot doesn't mean it has merit. *Thompson*, which is both binding precedent and law of the case,

8                      Opinion of the Court                    24-11998

governs our decision.[1]  And *Thompson* makes clear that a reduction in an employee's non-overtime hourly wage must be justified by factors other than the number of hours the employee worked. Otherwise, it will be considered an impermissible device to evade the FLSA's overtime-pay requirements.  Because the record establishes that the length of Thompson's workweek was the sole basis for reducing his non-overtime wage, the district court properly granted summary judgment in Thompson's favor.

A.  *Relevant FLSA Principles*

Under the FLSA, when an employee works more than forty hours in a week, he is entitled to overtime compensation for any excess hours "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employee's "regular rate," which determines the overtime rate, "is not an arbitrary label chosen by the parties; it is an actual fact." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). "[T]he regular rate refers to the hourly rate actually paid to the employee for the normal, non-overtime workweek for which he is employed." *Id.*

On appeal in *Thompson*, the parties disputed whether Thompson's "regular rate" was $13.00 or $11.15 per hour.

---

[1] *See Welch v. United States*, 958 F.3d 1093, 1098 (11th Cir. 2020) ("Under the law-of-the-case doctrine, this Court is generally bound by a prior appellate decision of the same case and is precluded from revisiting issues that were decided explicitly or by necessary implication in [the] prior appeal.") (quotation marks omitted).

Thompson alleged that his established non-overtime rate was $13.00 per hour, except during the period when he was regularly scheduled for overtime. Regions maintained, as it does in this appeal, that the parties freely contracted for the reduced regular rate of $11.15, which otherwise satisfied statutory minimums.

We recognized in *Thompson* that "an employer can lawfully reduce an employee's non-overtime rate in some situations." *Thompson*, 67 F.4th at 1306. Indeed, the FLSA generally protects the "freedom of contract" between employer and employee to set the regular rate at any point above the statutory minimums. *Id.* But this freedom "'does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes' of the FLSA." *Id.* (quoting *Walling v. Helmerich & Payne*, 323 U.S. 37, 42 (1944)). In other words, employers "can lawfully reduce an employee's weekly average rate, as long as they do not do so as a work-around of the FLSA's overtime-pay requirements." *Id.* at 1310.

According to *Thompson*, "[t]he difference between a permissible reduction in an employee's non-overtime hourly rate and an impermissible one comes down to whether the rate change 'is justified by no factor other than the number of hours' an employee worked." *Id.* (quoting 29 C.F.R. § 778.327(b)). In other words, an employer cannot "play[] with an employee's hours and rates to effectively avoid paying time-and-a-half for an employee's overtime hours." *Id.* at 1309. "Otherwise, an employer could use 'simple arithmetic' to lower an employee's rate and increase his hours so

that he could never earn time-and-a-half pay—'no matter how many hours he worked.'" *Id.* (quoting 29 C.F.R. § 778.327(a)). That prohibition advances the purposes of the FLSA, which are "to spread employment by placing financial pressure on the employer," and "to compensate employees" for the burden of a workweek in excess of forty hours. *Id.* at 1309–10 (quotation marks omitted). So "[w]hen a reduction in an employee's non-overtime hourly rate is justified by the length of his workweek, 'the device is evasive and the rate actually paid in the shorter or non[-]overtime week is his regular rate for overtime purposes in all weeks.'" *Id.* at 1310 (quoting 29 U.S.C. § 778.327(b)).

## B. Application

Applying these rules at the pleading stage, we held that Thompson "plausibly alleged that [Regions] used prohibited arithmetic" by "fluctuat[ing] his non-overtime hourly rate as a device to evade paying him overtime." *Thompson*, 67 F.4th at 1310–11. We noted that, under his reduced wage, Thompson earned "only $.50 more than he would have earned if he were paid his former $13.00 non-overtime hourly rate for all sixty hours of work," and that Regions restored Thompson's wage to $13.00 per hour once it stopped scheduling him for overtime. *Id.* at 1310. These allegations, we explained, supported a reasonable inference that Regions "slashed Thompson's non-overtime hourly rate to avoid paying him an overtime rate equal to one-and-a-half times his established $13.00 rate." *Id.*

Still, in vacating and remanding, we recognized that it was "possible that [Regions] reduced Thompson's weekly average rate for a different and permissible reason." *Id.* at 1310. Thus, as the district court correctly observed, the essential question before the court on remand was whether Regions reduced Thompson's non-overtime wage "because of legitimate 'factor[s] other than the number of hours' in his workweek." *Id.* at 1311 (quoting 29 C.F.R. § 778.327(b)).

And here, the district court properly granted summary judgment. Undisputed evidence shows that Regions paid Thompson $13 per hour in 2018 when he was working non-overtime workweeks. It reduced his pay to $11.15 per hour only when Thompson was working sixty-hour weeks. Then, after Regions stopped scheduling Thompson for regular overtime, it restored his hourly rate to $13 per hour. These facts, we have said, are sufficient to give rise to a reasonable inference that Regions "used the fluctuation in Thompson's weekly average rate as a device to avoid paying overtime compensation at one-and-a-half times the non-overtime hourly rate that Thompson earned during the weeks he did not work overtime hours." *Id.* at 1311. And Regions does not clearly identify or rely on any "legitimate factor other than the number of hours in his workweek" to justify the reduction of Thompson's non-overtime wage. *Id.*

Instead, Regions insists that it did not violate the FLSA since Thompson freely contracted to and accepted the lower hourly rate of $11.15 because he wanted to work more hours in a workweek

12                    Opinion of the Court                    24-11998

with the same employer, rather than with two separate employ-ers.[2]  But "the question of whether the employer has violated the FLSA does not hinge on contracts or agreements with the em-ployee" because "employees cannot contract out of their FLSA rights."  *Wethington v. City of Montgomery*, 935 F.2d 222, 229 (11th Cir. 1991).  And an employer, by contract or other device, can't "nullify[] the FLSA's overtime provisions."  *Thompson*, 67 F.4th at 1310.[3]

We've already concluded that Regions's payment scheme—insofar as it was justified solely by the length of his workweek—used "prohibited arithmetic" as a device to evade paying Thomp-son overtime.  *Id.* at 1310–11.  Because Regions failed to submit evidence of any factor other than the number of hours in Thomp-son's scheduled workweek that caused it to reduce his pay, the

---

[2] Regions repeatedly characterizes the rate reduction as the product of a "ne-gotiation" but fails to identify any record evidence to support that claim.  At best, it offers evidence that the reduced-rate arrangement made economic sense for Thompson, as an alternative to secondary employment.  But Re-gions's own CEO testified that he "did not negotiate that rate reduction with Thompson."  Thompson likewise testified that he was presented with a "take-it-or-leave-it" offer.

[3] "Recognizing that there are often great inequalities in bargaining power be-tween employers and employees, Congress made the FLSA's provisions man-datory; thus, the provisions are not subject to negotiation or bargaining be-tween employers and employees."  *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982).

court properly granted summary judgment in favor of Thompson. *See id.*

We reject the remainder of Regions's arguments as inapposite or inconsistent with *Thompson*. Regions relies on the Ninth Circuit's decision in *Parth*, a series of FLSA decisions by the Supreme Court in the 1940s[4], and 29 C.F.R. § 778.500. But *Parth* is not binding, of course. And in any case, it is readily distinguishable because there was no indication the payment plan at issue in *Parth* violated implementing guidance issued by the Department of Labor, unlike here. *Compare Parth*, 630 F.3d at 803 ("The regulations set out numerous examples by which employers may not avoid overtime, none of which are violated by this plan."), *with Thompson*, 67 F.4th at 1310–11 (concluding that the allegations raised an inference that Regions violated 29 C.F.R. § 778.327). Plus, the panel in *Thompson* considered *Parth* and the Supreme Court decisions, so they present no grounds for applying a different analysis here. As for § 778.500, that Regions did not violate a separate regulatory prohibition says nothing about whether its conduct violated the "non-circumvention rule" embodied in 29 C.F.R. § 778.327. *See Thompson*, 67 F.4th at 1309.

Regions's bare assertion that our discussion about § 778.327 was "dicta" is unconvincing. Our reliance on § 778.327 was necessary to our conclusion that Thompson stated a plausible claim

---

[4] *Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1942), *Walling v. Helmerich & Payne*, 323 U.S. 37 (1944), *Walling v. Youngerman-Reynolds*, 325 U.S. 419 (1945), and *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948).

under the FLSA, so it can't accurately be characterized as dicta. *See United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) ("[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before us.") (quotation marks omitted).

## V.  Attorney's Fees & Costs

Next, Regions challenges the district court's order awarding Thompson $94,627.50 in attorney's fees and $858.75 in mediation costs under 29 U.S.C. § 216(b).  Regions maintains that Thompson lacked prevailing-party status, that the fee award was excessive and unreasonable, and that mediation costs are not recoverable.

We review de novo whether a plaintiff is a "prevailing party." *Church of Scientology Flag Serv., Inc. v. City of Clearwater*, 2 F.3d 1509, 1513 (11th Cir. 1993).  And we review a district court's award of attorney's fees for an abuse of discretion. *Id.*

### A.  Prevailing-party Status

Section 216(b) provides that the court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  "The FLSA plainly requires that the plaintiff receive a judgment in his favor to be entitled to attorney's fees and costs." *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1206 (11th Cir. 2012).

To be considered a prevailing party, "there must be a court-ordered material alteration of the legal relationship of the parties." *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904 (11th Cir. 2003)

(cleaned up); *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603–04 (2001). "In other words, there must be: (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." *Smalbein*, 353 F.3d at 905 (cleaned up). Thus, one can be a prevailing party "under an enforceable judgment on the merits or under a court-ordered consent decree," which has "the necessary judicial approval and oversight to be considered an alteration in the legal relationship of the parties." *Id.*

In addition, we have recognized that "judicial action with sufficient judicial imprimatur other than a judgment on the merits or a court-ordered consent decree may allow for an award of attorney's fees." *Id.* Even without a judgment or formal consent decree, "a district court may still award attorney's fees to the prevailing party as long as: (1) it has incorporated the terms of the settlement into the final order of dismissal or (2) it has explicitly retained jurisdiction to enforce the terms of the settlement." *Id.* (citing *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002)). In either scenario, "[a] formal consent decree is unnecessary because the incorporation of the settlement into a court order or the explicit retention of jurisdiction over the terms of the settlement are the 'functional equivalent of an entry of a consent decree.'" *Id.*

Regions advances several grounds for concluding that Thompson is not a prevailing party. We reject each one.

1. Merits

Regions first contends that the district court erroneously granted summary judgment on its liability under the FLSA. But as we've explained, Regions is wrong about that. Because the court did not err, we reject this argument.

2. Rule 68

Next, Regions contends that a Rule 68 judgment awarding monetary damages is not a judicially sanctioned change in the legal relationship of the parties because the entry of a Rule 68 judgment is "ministerial" rather than "discretionary."

Rule 68(a) provides that "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). As relevant here, Rule 68(c) permits a party whose "liability to another has been determined" to "make an offer of judgment" before the "extent of liability" is determined. Fed. R. Civ. P. 68(c). If the offer is accepted, "[t]he clerk must then enter judgment." Fed. R. Civ. P. 68(a).

Our precedent recognizes that a Rule 68 judgment may confer prevailing-party status. In *Utility Automation*, we considered whether a plaintiff who accepted an offer of judgment under Rule 68 qualified as a prevailing party under a contractual attorney's fees provision. *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1248–49 (11th Cir. 2002). We explained that the Supreme Court's rationale in *Buckhannon*, though it did not "specifically mention Rule 68 offers of judgment," was "equally applicable in the present context." *Id.* at 1248. We acknowledged that

the court "exercises little substantive review over a Rule 68 offer" and "mechanically enters judgment" if the offer is accepted, unlike a consent decree. *Id.* But "[m]ore importantly," we reasoned that "an accepted offer has the necessary judicial imprimatur of the court, in the crucial sense that it is an enforceable judgment against the defendant." *Id.* (cleaned up). "Thus, unlike a defendant's voluntary change in conduct or a purely private settlement resulting in a dismissal, a Rule 68 judgment represents a judicially sanctioned change in the relationship between the parties." *Id.* (quotation marks omitted); *see also Smalbein*, 353 F.3d at 905 ("[J]udicial action with sufficient judicial imprimatur other than a judgment on the merits or a court-ordered consent decree may allow for an award of attorney's fees.").

So in *Utility Automation*, we concluded that the plaintiff was the prevailing party in its suit to enforce the contract because the "judgment included not only $45,000 in damages, but also a thirty-day non-competition injunction (a remedy specifically contemplated in . . . the contract)," which were "subject to the court's power to enforce." 298 F.3d at 1248–49. A concurring opinion observed that the majority opinion "may aim to resolve the question of whether accepting *any* Rule 68 offer—even one not including injunctive relief—renders a plaintiff a 'prevailing party,'" and instead suggested narrower grounds for finding prevailing-party status, namely that the judgment ordered discretionary injunctive relief. *See id.* at 1249–51 (Marcus, J., concurring).

Here, Thompson qualifies as a prevailing party. After the district court determined that Regions was liable for violating the FLSA's overtime provisions, Regions offered, and Thompson accepted, entry of judgment "in the amount of $5,650.82, in full satisfaction of all wage claims and liquidated damages." The offer's terms make clear that it was based on the adverse liability determination, which Regions intended to challenge on appeal—*i.e.*, following a final, enforceable judgment incorporating that ruling. And the offer was made "without prejudice" to Thompson's right to seek attorney's fees under § 216(b), which indicates that the parties did not intend for the Rule 68 judgment to cut off entitlement to attorney's fees as a prevailing party. Then, the court "incorporate[d] the terms of the settlement into the final order of dismissal," *Chmielarz*, 289 F.3d at 1320, awarding $5,650.82 in unpaid overtime compensation and liquidated damages, while retaining jurisdiction to award reasonable attorney's fees.

Because the district court's Rule 68 judgment awarded Thompson sought-after relief that is "subject to the court's power to enforce," the judgment "has the necessary judicial imprimatur of the court, in the crucial sense that it is an enforceable judgment against the defendant." *Util. Automation*, 298 F.3d at 1248 (cleaned up); *see Smalbein*, 353 F.3d at 907 (plaintiff was prevailing party where he sought and received monetary damages for his claims under a court-approved settlement). Not only that, but the Rule 68 judgment was based on a judicial ruling of merits liability, so the judgment was functionally equivalent to one on the merits, subject to Regions's right to appeal. We also note that the court reviewed

24-11998                Opinion of the Court                19

the terms of the Rule 68 settlement and determined that it was a "fair and reasonable" resolution of the FLSA dispute under *Lynn's Food Stores*.[5]   So despite the lack of injunctive relief, the record shows that the Rule 68 judgment in this case, like the one in *Utility Automation*, represents a judicially sanctioned change in the relationship between the parties. *See Util. Automation*, 298 F.3d at 1248.

Regions complains that the district court failed to fulfill its ministerial function under Rule 68, and that the court changed the terms of the offer to not preserve Regions's right to appeal.  But as Regions acknowledges, any error in that respect is harmless because we have already concluded that Regions preserved its right to appeal, and "parties cannot create federal subject matter jurisdiction by contract" in any event. *Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1195, 16 (11th Cir. 2023).  Regions doesn't suggest that the district court's judgment omitted any other term from its Rule 68 offer.

---

[5] In *Lynn's Food Stores v. United States*, we stated,

> Other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable res[o]lution of a bona fide dispute over FLSA provisions.

679 F.2d 1350, 1355 (11th Cir. 1982).

### 3. Stay of Execution

Finally, Regions contends that Thompson is not a prevailing party because execution of the judgment has been stayed pending this appeal.  But nothing prevented the district court from awarding attorney's fees pending the appeal.  *See, e.g.*, *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 939–40 (11th Cir. 2020) (holding that attorney's fees are collateral to the merits in an FLSA action, and do not prevent judgment on the merits from being final).  And in any case, because we have resolved the merits appeal against Regions, its argument in this regard is effectively moot.

For these reasons, the district court did not err in finding that Thompson was a prevailing party under § 216(b).

## B. Reasonableness of Attorney's Fees

Regions next challenges the reasonableness of the attorney's fees award.  The key metric by which a motion for attorney's fees is evaluated is "reasonableness."  *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  A "reasonable" fee award is arrived at by first calculating the "lodestar."  *Id*.  The lodestar is the product of "the number of hours reasonably expended on the litigation times a reasonable hourly rate."  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (quotation marks omitted).  We presume the lodestar figure represents a reasonable fee, but it can be adjusted upward or downward based on other considerations, including the results obtained.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The fee applicant bears the burden of documenting the appropriate hours and hourly rates. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). We have said that fee applicants must exercise "billing judgment," excluding from their fee requests excessive, redundant, or otherwise unnecessary hours. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Id.* (quotation marks omitted). The court may conduct an hour-by-hour review, or, if the fee application is voluminous and such a review would be wasteful, the court may make an across-the-board cut. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). Either way, "the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation," so as to permit meaningful review. *In re Home Depot Inc.*, 931 F.3d 1065, 1089 (11th Cir. 2019). "The level of specificity required by district courts is proportional to the specificity of the fee opponent's objections." *Id.*

Also, because civil-rights suits sometimes involve common facts and related legal theories, the district court should not reduce a plaintiff's attorney's hours merely because the plaintiff won under some theories and not others. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1307 (11th Cir. 2001). "Whether hours were reasonably expended on litigation is a different question than whether hours were necessary to the litigation, the latter standard being the more exacting of the two." *Id.* at 1308. Instead, the district court

should focus on the thrust of the "overall relief" obtained by the plaintiff. *Hensley*, 461 U.S. at 435. So a fee award need not necessarily be "reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*

Here, the district court did not abuse its discretion in awarding attorney's fees. Based on time records and declarations submitted by Thompson's three attorneys, the magistrate judge determined that they reasonably expended a total of 242.15 hours on this litigation, at hourly rates of $375 or $400, for a total lodestar figure of $94,627.50.

Regions maintains that an across-the-board reduction was warranted for two related reasons: (1) Thompson presented a voluminous and cumbersome fee application characterized by "block billing" and vague descriptions; and (2) Thompson's lack of success on an "unpled" request for recovery of non-overtime pay. Regions has not established that the district court abused its discretion in denying a reduction on either ground.

First, the district court reasonably declined to grant a reduction based on the adequacy of the billing statements. In the R&R, the magistrate judge rejected Regions's broad objections that the attorneys' billing statements were "replete with unacceptable block billing practices and vague descriptions," and were otherwise—except for a few entries approved by Regions—objectionable as "providing insufficient details, excessive to the needs of the case, [and] duplicative of work performed by others," among other problems. The magistrate judge found that the billing statements

did not reflect block billing[6] because they either listed each task as a separate entry or included two or three related tasks in the same entry, and that none of the statements were so vague or voluminous as to frustrate the court's review.  The magistrate judge further concluded that Regions had failed to comply with local rules by "identif[ying] which time entries it objects to for which reason with supporting authority," and had "waived most of its objections to the time entries by failing to develop the objections."[7]

Regions provides no reason to second guess the considered findings of the magistrate judge on the sufficiency of Thompson's fee application, and the magistrate judge otherwise articulated and gave principled reasons for the decisions as to the appropriate hours and hourly rates.  *See in re Home Depot Inc.*, 931 F.3d at 1089. So Regions has not shown that the district court abused its discretion in finding that 242.15 hours were reasonably expended on the litigation.

---

[6] "Block billing is defined as billing multiple unrelated tasks in one billing entry, such that it becomes difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task." *Johnston v. Borders*, 36 F.4th 1254, 1279 n.46 (11th Cir. 2022) (quotation marks omitted).

[7] One exception was Regions's objection to attorney's fees related to mediation, which was based on an argument that Thompson failed to mediate in good faith by pursuing more relief—in the form of non-overtime wages—than was available under law.  But the magistrate judge reasonably concluded that merely taking an incorrect legal position, particularly without "any court order ruling against [that] position," fails to suggest bad faith or to establish a "basis not to award fees for time billed related to mediation."  We see no abuse of discretion on this point.

Second, the district court did not abuse its discretion by refusing to grant an across-the-board cut based on the results obtained. Thompson prevailed on the sole FLSA claim raised in his complaint, obtaining a judgment for the full amount of unpaid overtime compensation and liquidated damages, $5,650.82.

To be sure, Thompson's summary-judgment motion also sought damages in the form of non-overtime wages, based on the difference between the artificial ($11.15) and regular ($13) hourly rates, for a total amount of approximately $3,500. And courts may "consider[] the damages awarded as a relevant factor." *Villano*, 254 F.3d at 1307–08.

But the district court was not required to grant a reduction on that basis. The record shows that the non-overtime damages request was based on the same "common core of facts" as the demand for unpaid overtime compensation, that Thompson voluntarily dropped the request in accepting Regions' Rule 68 offer, and that Thompson otherwise obtained an excellent result on his FLSA claim. *See Henley*, 461 U.S. at 435; *Villano*, 254 F.3d at 1307. It was well within the court's discretion to conclude that any hours spent on that litigation position were reasonably expended on the litigation, even if Thompson ultimately did not recover under that theory. *See Henley*, 461 U.S. at 435; *Villano*, 254 F.3d at 1309–10. The damages awarded to Thompson, while relevant, do not compel a reduction of the attorney's fees award.

## C. Mediation Costs

Finally, Regions challenges the award of $858.75 in mediation costs. The FLSA expressly mandates an award of "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). A "reasonable attorney's fee," as the term is used in federal fee-shifting statutes, includes "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case." *Evans v. Books-A-Million*, 762 F.3d 1288, 1298 (11th Cir. 2014) (quotation marks omitted). And it can include costs that are not taxable under 28 U.S.C. § 1920. *Id.* So "reasonable litigation expenses such as mediation . . . may be recovered . . . if it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses." *Id.* at 1299.

Here, the district court did not abuse its discretion in awarding the mediation fee. The magistrate judge found that courts in the Southern District of Florida had awarded prevailing parties the cost of mediation under the FLSA, and Regions makes no claim that it was not the prevailing practice in the legal community to bill fee-paying clients separately for mediation expenses. *See id.* That the expenses were not taxable under § 1920 does not preclude their recovery under § 216(b). *See id.* at 1298. And Regions offers no support for its claim that Thompson mediated in bad faith.

## VI.

In sum, we affirm the district court in all respects.

**AFFIRMED.**